UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| JAMES J. HEBERT | CIVIL ACTION |
|---|---|
| VERSUS | NO. 17-2784 |
| DARREL VANNOY, WARDEN | SECTION: "E"(1) |

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2). Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, James J. Hebert, is a state prisoner incarcerated at the Louisiana State Penitentiary in Angola, Louisiana. On September 6, 2012, he was convicted of aggravated rape.[1] On October 5, 2012, he was sentenced to a term of life imprisonment without benefit of probation, parole, or suspension of sentence.[2] On September 17, 2013, the Louisiana First Circuit Court of

---

[1] State Rec., Vol. 2 of 3, trial transcript, p. 586; State Rec., Vol. 1 of 3, minute entry dated September 6, 2012; State Rec., Vol. 1 of 3, jury verdict form.
[2] State Rec., Vol. 2 of 3, transcript of October 5, 2012; State Rec., Vol. 1 of 3, minute entry dated October 5, 2012.

Appeal affirmed his conviction and sentence.³ The Louisiana Supreme Court then denied his related writ application on March 21, 2014.⁴

On or about March 10, 2015, petitioner filed an application for post-conviction relief with the state district court.⁵ That application was denied on June 17, 2015.⁶ His related writ applications were then likewise denied by the Louisiana First Circuit Court of Appeal on October 20, 2015,⁷ and by the Louisiana Supreme Court on March 13, 2017.⁸

On or about March 24, 2017, petitioner filed the instant federal application seeking habeas corpus relief.⁹ Although conceding that the application is timely and that petitioner exhausted his remedies in the state courts, the state argues that petitioner is not entitled to relief because his claims have no merit.¹⁰

## I. Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal habeas corpus legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both. The amendments "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002).

---

³ State v. Hebert, No. 2013 KA 0172, 2013 WL 5288858 (La. App. 1st Cir. Sept. 17, 2013); State Rec., Vol. 3 of 3.
⁴ State v. Hebert, 135 So. 3d 619 (La. 2014); State Rec., Vol. 3 of 3.
⁵ State Rec., Vol. 3 of 3.
⁶ State Rec., Vol. 3 of 3, Judgment dated June 17, 2015.
⁷ State v. Hebert, No. 2015 KW 1109 (La. App. 1st Cir. Oct. 20, 2015); State Rec., Vol. 3 of 3.
⁸ State ex rel. Hebert v. State, 212 So. 3d 1153 (La. 2017); State Rec., Vol. 3 of 3.
⁹ Rec. Doc. 3.
¹⁰ Rec. Doc. 11.

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." Bell, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases. A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir. 2010) (internal quotation marks, ellipses, brackets, and footnotes omitted).

3

Regarding the "unreasonable application" clause, the United States Supreme Court has held: "[A] state-court decision is an unreasonable application of our clearly established precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." White v. Woodall, 134 S. Ct. 1697, 1706 (2014). However, the Supreme Court cautioned:

> Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error. Thus, if a habeas court must extend a rationale before it can apply to the facts at hand, then by definition the rationale was not clearly established at the time of the state-court decision. AEDPA's carefully constructed framework would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law.

Id. (citations and quotation marks omitted). Therefore, when the Supreme Court's "cases give no clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established Federal law." Wright v. Van Patten, 552 U.S. 120, 126 (2008) (quotation marks and brackets omitted). The Supreme Court has also expressly cautioned that "an unreasonable application is different from an incorrect one." Bell, 535 U.S. at 694. Accordingly, a state court's merely incorrect application of Supreme Court precedent simply does not warrant habeas relief. Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").

While the AEDPA standards of review are strict and narrow, they are purposely so. As the United States Supreme Court has held:

> [E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.

> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a guard against *extreme malfunctions* in the state criminal justice systems, *not a substitute for ordinary error correction through appeal. As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

Harrington v. Richter, 562 U.S. 86, 102-03 (2011) (citations omitted; emphasis added); see also Renico v. Lett, 559 U.S. 766, 779 (2010) ("AEDPA prevents defendants – and federal courts – from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.").

The Supreme Court has expressly warned that although "some federal judges find [28 U.S.C. § 2254(d)] too confining," it is nevertheless clear that "all federal judges must obey" the law and apply the strictly deferential standards of review mandated therein. White v. Woodall, 134 S. Ct. 1697, 1701 (2014).

## **II. Facts**

On direct appeal, the Louisiana First Circuit Court of Appeal summarized the facts of this case as follows:

> The victim, C.L.,[FN 1] as well as other victims of the defendant, testified at trial. She said that her date of birth was November 12, 1999. The defendant was her stepfather. The victim testified that during the summer of 2010, the defendant had her put her hand on his private and squeezed his private. She also indicated the defendant put his mouth or tongue on her private and licked her. Additionally, she stated the defendant put a condom on his private part and put it in her private part.
>
> > [FN 1] The victims are referenced herein only by their initials. See La. R.S. 46:1844(W).

The State also played the victim's statement to the Child Advocacy Center, recorded on July 14, 2011. The victim indicated she was eleven years old and had come to talk about her stepdad, the defendant, molesting her. Her mother worked as a cashier at Wal-Mart from 10:00 p.m. until 7:00 a.m., and the incidents occurred after she left for work. The victim stated the defendant had DVDs of people having sex and "boob" magazines in a bag in her room. She indicated she had watched the movies and looked at the magazines with the defendant. She stated the incidents began with the defendant asking her if she "wanted to do it for him?" This was his way of asking her to "squeeze his dick." She indicated she wanted the defendant to lick her, but then told him to stop because it made her feel bad. He also asked to lick her "down there." He had licked her "pussy" three times. Additionally, the defendant had rubbed the victim "in [her] pussy" with his fingers on two occasions. The victim indicated the defendant had "rubbed his dick in [her] a little bit because [she] wanted to know what it felt like." This happened on one occasion and the defendant had "white stuff" in the condom he was wearing. The defendant told the victim not to tell anyone what he had done to her.

The defendant did not testify at trial. The State, however, played his statement concerning the offense, recorded on July 14, 2011. The defendant stated he watched pornography with the victim in November of 2010. He indicated he had licked the victim's vagina, at her request, on two occasions during the weekend before July 14, 2011. He stated the victim had masturbated him while he wore a condom. He indicated he "might have" touched the victim's clitoris with his fingers. He also indicated the victim had rubbed his penis on the outside of her vagina. He denied penetrating the victim's vagina with his penis.

Additionally, Dawn Buquet testified she was a forensic interviewer and investigator for the Terrebonne Children's Advocacy Center. On November 14, 2002, the defendant told Buquet that he had "sexually inappropriate behavior" with at least three girls ages 8, 11, and 15 years old. Thereafter, the defendant was arrested for sexual battery on K.M.

T.D. testified she was the niece of the defendant. She indicated, when she was 10 or 11 years old, she had found the defendant "messing around under [her] blankets." The defendant also asked her whether she had noticed if her friends were growing hair in their private areas.

L.G. testified she was the cousin of the defendant. She indicated, when she was in the first grade, the defendant asked her whether he could touch her privates, and she told him no. He also begged her to "touch him," and pulled down his pants to show her his pubic hair.

K.M. testified the defendant was related to her mother's sister. She indicated, when she was approximately 10 years old, the defendant rubbed her leg and touched her private area.[11]

---

[11] State v. Hebert, No. 2013 KA 0172, 2013 WL 5288858, at *1-2 (La. App. 1st Cir. Sept. 17, 2013); State Rec., Vol. 3 of 3.

## III. Petitioner's Claims

## A. Denial of Challenge for Cause

Petitioner's first claim is that the trial court violated his right to due process by denying a defense challenge for cause. On direct appeal, the Louisiana First Circuit Court of Appeal denied that claim, holding:

> [T]he defendant argues the trial court erred in denying the defense challenge for cause against prospective juror Rosalie Trahan because her granddaughter had been sexually abused.
>
> The State or the defendant may challenge a juror for cause on the ground that the juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence. La.Code Crim. P. art. 797(2). A challenge for cause should be granted, even when a prospective juror declares his ability to remain impartial, if the prospective juror's responses as a whole reveal facts from which bias, prejudice, or inability to render judgment according to the law reasonably may be inferred. However, the trial court is vested with broad discretion in ruling on a challenge for cause; its ruling will not be disturbed on appeal absent a showing of an abuse of discretion. State v. Henderson, 99-1945 (La.App. 1st Cir. 6/23/00), 762 So.2d 747, 754, writ denied, 2000-2223 (La. 6/15/01), 793 So.2d 1235.
>
> In order for a defendant to prove reversible error warranting reversal of both his conviction and sentence, he need only show the following: (1) erroneous denial of a challenge for cause; and (2) use of all his peremptory challenges. Prejudice is presumed when a defendant's challenge for cause is erroneously denied and the defendant exhausts all his peremptory challenges.[FN 2] An erroneous ruling depriving an accused of a peremptory challenge violates his substantial rights and constitutes reversible error. State v. Taylor, 03-1834 (La. 5/25/04), 875 So.2d 58, 62.
>
> > [FN 2] The rule is different at the federal level. See United States v. Martinez-Salazar, 528 U.S. 304, 120 S.Ct. 774, 145 L.Ed.2d 792 (2000) (exhaustion of peremptory challenges does not trigger automatic presumption of prejudice arising from trial court's erroneous denial of a cause challenge).
>
> A trial judge's refusal to excuse a prospective juror for cause is not an abuse of his discretion, notwithstanding that the juror has voiced an opinion seemingly prejudicial to the defense, when subsequently, on further inquiry or instruction, he has demonstrated a willingness and ability to decide the case impartially according to the law and the evidence. Taylor, 875 So.2d at 63.

Rosalie M. Trahan was on the second panel of prospective jurors. During voir dire, she indicated her granddaughter had been molested by her stepfather. In response to questioning from the trial court, Trahan indicated the incident would affect her ability to be fair and impartial in the case. The court asked whether she could follow an instruction to put the incident involving her granddaughter aside and realize it has nothing to do with the instant case. Trahan replied, "I think I would have a hard time." The court asked her if she would be prejudiced against the defendant. She replied, "Not say prejudiced; I'd just – I guess because it happened in my family. I would just have a hard time, you know, just[.]" The court asked Trahan if she realized the fact that someone was charged with a crime did not mean they were guilty of the crime. She replied, "Right. But, I mean, if I would have to come, I would have to just put things aside. You know, I – I would probably try to put the things aside."

In response to questioning by the State, Trahan indicated she would not find the defendant guilty just because of the incident involving her granddaughter. She also indicated she would base her decision on the evidence in the case and not on what had happened to her granddaughter. She agreed that she would have to set aside the incident involving her granddaughter and decide the instant case on the basis of the evidence from the witness stand and what she heard, saw, and evaluated from the witness stand. She also agreed that if the defendant was guilty, she would find him guilty; but if he was not guilty, she would also find him not guilty "no matter what happened in [her] family." The defense asked Trahan, "if you were compelled to be on this jury, you would not be unaffected by what happened to your grand-daughter?" Trahan replied, "No." The defense also asked her if she realized there were questions of degree, and did she think, based on what she had experienced in her own family, she would have difficulty deciding whether or not a witness was telling the truth or shading the truth or lying or exaggerating the truth. Trahan replied, "No, because the defendant is not a family member. I mean, its [sic] like – I don't know how I want to say this because I'm kind of nervous and a lot of this just brings things up because we're still going through all that." Thereafter, the defense asked, "My question is: Could you be fair to someone who is accused of molesting his stepdaughter?" Trahan replied, "No."

The court further questioned Trahan as follows:

> [Court]: Ma'am, let me ask you this. But can you in this particular case, can you sit here and listen to the evidence, determine whether all the elements of the crime are proven by the testimony and determine guilt or innocence? Can you do that and be fair and impartial to both sides?
>
> [Trahan]: I think so, yes.
>
> [Court]: And put – And put together Put your, your, your –
>
> [Trahan]: Right.

8

> [Court]: – grand-daughter's case out of your, [sic] and realize it has nothing to do with this case? You can be fair and impartial to both sides?
>
> [Trahan]: Yes.
>
> The State further questioned Trahan, "What he's asking, ma'am, can you be fair in this case? No matter what the facts may come to be, can you look at him in a fair way, for both sides, and decide guilt or not guilty in an unbias [sic], fair way?" Trahan replied, "Yes."
> The defense further questioned Trahan if she was saying she could be fair even if the alleged perpetrator was a father and the alleged victim was a stepdaughter. Trahan replied, "Yes."
> The defense challenged Trahan for cause on the basis that her granddaughter had been molested by her son-in-law. The State argued that when Trahan understood the question, she clearly stated she could be fair and impartial. The court denied the challenge for cause, noting Trahan had been initially confused by the defense questions, but had then indicated she could be fair and impartial. The defense objected to the denial of the challenge for cause and used its ninth peremptory challenge against Trahan before exhausting all of its peremptory challenges.
> The trial court did not abuse its broad discretion in denying the challenge for cause against Trahan. The challenged prospective juror demonstrated a willingness and ability to decide the case impartially according to the law and the evidence and her responses as a whole did not reveal facts from which bias, prejudice, or inability to render judgment according to the law could reasonably be inferred.
> This assignment of error is without merit.[12]

Without assigning additional reasons, the Louisiana Supreme Court then likewise denied relief.[13]

In this federal habeas corpus proceeding, this claim warrants little consideration. Regardless of whether Trahan should have been excused for cause, which is an issue this Court need not and does not reach, petitioner's claim clearly fails for an entirely different reason. Where a challenged juror is removed by use of a peremptory challenge after the denial of a challenge for cause, a petitioner is entitled to federal habeas corpus relief only if he demonstrates that the jury

---

[12] State v. Hebert, No. 2013 KA 0172, 2013 WL 5288858, at *2-4 (La. App. 1st Cir. Sept. 17, 2013); State Rec., Vol. 3 of 3.
[13] State v. Hebert, 135 So. 3d 619 (La. 2014); State Rec., Vol. 3 of 3.

9

ultimately selected to try the case was not impartial. Ross v. Oklahoma, 487 U.S. 81, 85-86 (1988).

In Ross, the Supreme Court further expressly noted:

> [W]e reject the notion that the loss of a peremptory challenge constitutes a violation of the constitutional right to an impartial jury. We have long recognized that peremptory challenges are not of constitutional dimension. They are a means to achieve the end of an impartial jury. So long as the jury that sits is impartial, the fact that the defendant had to use a peremptory challenge to achieve that result does not mean the Sixth Amendment was violated.

Id. at 88 (citations omitted); accord Edwards v. Stephens, 612 Fed. App'x 719, 722 (5th Cir. 2015) ("[T]he forced use of a peremptory challenge does not rise to the level of a constitutional violation. Instead, a district court's erroneous refusal to grant a defendant's challenge for cause is only grounds for reversal if the defendant establishes that the jury which actually sat to decide his guilt or innocence was not impartial." (citation and quotation marks omitted)).

Because defense counsel used a peremptory challenge to strike Trahan and because petitioner has failed to demonstrate that the jury ultimately selected was not impartial, his claim necessarily fails. Dorsey v. Quarterman, 494 F.3d 527, 533 (5th Cir. 2007); Lagrone v. Cockrell, No. 02-10976, 2003 WL 22327519, at *12 (5th Cir. Sept. 2, 2003); Arita v. Cain, Civ. Action No. 11-636, 2011 WL 4738666, at *29 (E.D. La. Aug. 25, 2011), adopted, 2011 WL 4738658 (E.D. La. Oct. 6, 2011), aff'd, 500 Fed. App'x 352 (5th Cir. 2012); Higgins v. Cain, Civ. Action No. 09-2632, 2010 WL 890998, at *27 (E.D. La. Mar. 8, 2010), aff'd, 434 Fed. App'x 405 (5th Cir. 2011), Stoves v. LeBlanc, Civ. Action No. 04-2037, 2010 WL 3523012, at *12 (E.D. La. Apr. 10, 2009), adopted, 2010 WL 3522957 (E.D. La. Sept. 1, 2010); Wilson v. Cain, Civ. Action No. 06-890, 2009 WL 2163124, at *12 (E.D. La. July 16, 2009), aff'd, 641 F.3d 96 (5th Cir. 2011).

That result is not changed by the fact that Louisiana state law provides relief when a defendant's challenge for cause is erroneously denied and the defendant exhausts all his peremptory challenges. Because that is a protection afforded only by *state* law, a violation of that

10

protection is not cognizable in this federal proceeding. Federal habeas corpus relief may be granted only to remedy violations of the Constitution and laws of the United States; mere violations of state law will not suffice. 28 U.S.C. § 2254; Engle v. Isaac, 456 U.S. 107, 119 (1983).

### B.  Ineffective Assistance of Counsel

Petitioner's second and final claim is that he received ineffective assistance of counsel at trial. In the post-conviction proceedings, the state district court denied that claim, holding:

> Petitioner alleges that counsel failed to properly exercise the skill, judgment, and diligence of a reasonably competent defense attorney and that this failure prejudiced Petitioner a fair trial. Petitioner claims that counsel was ineffective for failing to obtain and secure funds for an expert witness. He alleges this failure resulted in his defense counsel being unable to adequately question State's two expert witnesses. After review and consideration, the trial court believes that all material questions of fact and law can be properly resolved without an evidentiary hearing based solely on the record. La. C.Cr.P. 928.

### *LAW: Sixth Amendment and the* Strickland *Standard*

> The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right … to have assistance of counsel for his defense." U.S. Const. amend. VI. This guarantee "safeguards … fundamental human rights of life and liberty." Johnson v. Zerbest, 304 U.S. 458, 462 (1938). It is the very reason why "appointment of counsel for an indigent is required at every stage of a criminal proceeding where substantial rights of accused may be affected." Mempa v. Rhay, 389 U.S. 128, 134 (1967).
>
> Ineffective assistance claims are determined under Strickland's two-prong test. Strickland v. Washington, [466] U.S. 668, 685 (198[4]). Court defines "the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Id. 686-687 (1984). In summary, the Petitioner must meet the high burden of establishing "that counsel's performance was deficient" and that "this deficient performance prejudiced his defense." State v. Pratt, 26,862 (La. App. 2 Cir. 1995).
>
> Under Strickland's first prong, deficiency turns on whether counsel was reasonably competent, "not perfect." Yarborough v. Gentry, 540 U.S. 1, 8 (2003). The reasonableness of an attorney is determined by "professional norms" which falls within a "wide range of professional assistance." Strickland, [466] U.S. 668, 688 (1984); Kimmelman v. Morrison, 477 U.S. 365 (1986). When evaluating the reasonableness standard as applied to ineffective assistance of counsel, the Court will undertake "a detailed examination of the specific facts and circumstances of the case. This is necessary … because effectiveness of counsel cannot be defined

in a vacuum, but rather requires an individual, fact-specific inquiry." State v. Peart, 621 So. 2d 780, 788 (La. 1993).

Strickland's second prong requires the Petitioner to establish that counsel's objectively unreasonable performance prejudiced the petitioner a fair trial. Prejudice is present when "reasonable probability existed that, absent errors, the factfinder would have had a reasonable doubt respecting guilt." Kimmelman, 477 U.S. 365, 380 (1986); see also Strickland, [466] U.S. 668, 695 (1984). The Court in Strickland defines reasonable as "probability sufficient to undermine confidence in the outcome." Id. at 694. This standard requires more than a mere probability that the defendant would more likely than not the [sic] have received a different verdict. Id. at 694; Jones v. Cain, 151 So.3d 781, 793 (2014). It demands a showing that the prejudice "undermines the confidence of the outcome." Id.

Petitioner alleges that counsel failed to properly exercise the skill, judgment, and diligence of a reasonably competent defense attorney and that this failure prejudiced the Petitioner a fair trial. Petitioner articulates that counsel was ineffective for failing to obtain and secure funds for an expert witness. He argues this failure caused in [sic] his defense counsel to inadequately question State's two expert witnesses.

### *Defense Counsel Was Not Ineffective for Failing to Secure Funds for an Expert*

*A. Petitioner did not meet* Touchet *standard to secure funds and obtain an expert*

Before determining whether defense counsel's actions were deficient and prejudiced the Petitioner's trial, the Court must examine the standard used to determine whether an indigent defendant would have been able to obtain an expert. If Petitioner preliminarily is unable to demonstrate the need, then there is no evidence that his counsel's performance fell below the Strickland standard outlined in the above case law.

Louisiana Courts have stated that for an indigent defendant to obtain an expert he must first meet a "threshold showing as to need for an expert assistance" and second "he must establish that the expert assistance will be necessary to the construction of an effective defense." State v. Touchet, 642 So.2d 1213, 1215 (La. S.Ct. 1994). This standard was further defined in Moore where the Court held that a reasonable probability must exist both that the expert would be of assistance to the defense and denial of the expert would result in a fundamentally unfair trial. Moore v. Kemp, 809 F.2d 702 (11th Cir. 1987). Therefore, the burden is on the defendant to (1) establish more than that he merely wants expert [sic] but that he needs one because (2) without an expert his trial would be fundamentally unfair.

In Caldwell v. Mississippi, the US Supreme Court held that the defendant failed to demonstrate a need for a ballistic expert. The Court stated that the defendant "only offered little more than undeveloped assertions that the requested assistance would be beneficial." Caldwell v. Mississippi, 472 U.S. 320, 325 (US S.CT. 1985). Therefore, a vague and conclusive statement falls far below the requisite standard articulated by the Courts.

12

> Like in Caldwell, the Petitioner vaguely requests for a [sic] psychologists or psychiatrists without more description. In his petition, he merely suggests that an "expert witness could have testified … that [the defendant] suffered from a major depressive disorder." (PCR Memo pg 7). The conditional phrase of "could have" is not enough to meet the threshold need for an expert.
> Second, the defendant does not demonstrate that failing to obtain an expert resulted in a fundamentally unfair trial. When reviewing the record, the overwhelming evidence demonstrates that the absence of an independent expert did not result in a fundamentally unfair trial. Not only did the defendant confess to his charges but also his confession was corroborated by the victim's description of the year-long sequence of criminal acts. Additionally, there was physical evidence documented in medical reports supporting both the victim's testimony and defendant's confession of continuous rape. A review of the record does not indicate once before or during trial, the defendant's request for such an expert. Therefore, defense counsel's failure to secure and obtain an expert did not result in a fundamentally unfair trial.
> After examining the applicable standard, Petitioner's argument fails to establish that his counsel was ineffective under Strickland. Counsel's actions were not deficient. Even if defense counsel had moved for an independent expert to testify or assist at Petitioner's trial, the above analysis demonstrates that he would have been unable to meet the two prongs necessary to obtain an expert.
>
> *B. Defense Counsel's decision falls within the ambit of trial strategy under Strickland*
>
> As stated above in the section detailing the Strickland standard, an attorney's conduct is only deficient when his actions fall outside the wide range of professional tactics. Here, defense counsel is a seasoned public defender with close to 25 years of experience. Determining whether or not to request an independent expert is well within the ambit of tactical decisions that he must make. Therefore, defense counsel was not deficient. Furthermore, the failure to not [sic] obtain and secure an expert did not prejudice the petitioner of a fair trial. Merely obtaining an independent expert would not have altered the verdict when juxtaposition [sic] against the overpowering evidence demonstrating Petitioner's guilt of aggravated rape of his eleven year old step-daughter.
> This assignment of error is without merit and dismissed as denies any relief.[14]

Without assigning reasons, the Louisiana First Circuit Court of Appeal then denied petitioner's related writ application.[15] The Louisiana Supreme Court thereafter likewise denied relief, stating: "Writ denied. Relator fails to show he received ineffective assistance of counsel under the standard

---

[14] State Rec., Vol. 3 of 3, Judgment dated June 17, 2015.
[15] State v. Hebert, No. 2015 KW 1109 (La. App. 1st Cir. Oct. 20, 2015); State Rec., Vol. 3 of 3.

of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). We attach hereto and make a part hereof the District Court's written reasons denying relator's application."[16]

As the state courts correctly noted, an ineffective assistance of counsel claim must be evaluated under the standards set forth by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). Under Strickland, a petitioner seeking relief on such a claim is required to show both that counsel's performance was deficient *and* that the deficient performance prejudiced his defense. Id. at 697. The petitioner bears the burden of proof and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000). If a court finds that the petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong. Strickland, 466 U.S. at 697.

To prevail on the deficiency prong of the Strickland test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. See Strickland, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690). The petitioner must overcome a strong presumption that the conduct

---

[16] State *ex rel.* Hebert v. State, 212 So. 3d 1153 (La. 2017); State Rec., Vol. 3 of 3.

14

of his counsel falls within a wide range of reasonable representation. See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to prove prejudice with respect to trial counsel, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id. In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." Crockett, 796 F.2d at 793.

Moreover, because an ineffective assistance of counsel claim presents a mixed question of law and fact, this Court must defer to the state court decision rejecting petitioner's claim unless that decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002). Further, the United States Supreme Court has explained that, under the AEDPA, federal habeas corpus review of an ineffective assistance of counsel claim is in fact *doubly* deferential:

> The pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a Strickland claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself.
> A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision. Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004). And as this Court has explained, "[E]valuating whether a

> rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." Ibid. "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." Knowles v. Mirzayance, 556 U.S. ____, ____, 129 S.Ct. 1411, 1413-14, 173 L.Ed.2d 251 (2009) (internal quotation marks omitted).

Harrington v. Richter, 562 U.S. 86, 101 (2011) (citation omitted). The Supreme Court then explained:

> Surmounting Strickland's high bar is never an easy task. An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence. The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.
> Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. *The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.* The Strickland standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). *When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.*

Id. at 105 (citations omitted; emphasis added). Therefore, on a habeas review of an ineffective assistance claim, "federal courts are to afford *both* the state court *and* the defense attorney the benefit of the doubt." Woods v. Etherton, 136 S. Ct. 1149, 1151 (2016) (quotation marks omitted; emphasis added). For the following reasons, the Court finds that, under those stringently deferential standards, it simply cannot be said that relief is warranted with respect to petitioner's ineffective assistance of counsel claim.

16

Here, petitioner argues that counsel was ineffective for failing to secure funds to hire a psychiatrist and/or psychologist to "investigate and evaluate [petitioner's] mental condition at the time of the crimes."[17] Petitioner alleges that "[e]veryone in [his] family knew he had an abnormal tendency to prey on young female children sexually."[18] Despite the fact, and the fact that he had in the past pleaded guilty to sexually molesting three of his family members, he never received psychological help for his disorder.[19] He opines that "[i]t could also be possible that [he] has symptoms of post-traumatic stress disorder and depression" which resulted in his "relapse" into sexually assaultive behavior.[20]

It is clear that, under Louisiana law, funds are available under some circumstances to hire various types of experts to assist in the defense of indigent defendants. See State v. Touchet, 642 So. 2d 1213, 1215 (La. 1994). However, the Louisiana Supreme Court has explained:

> [F]or an indigent defendant to be granted the services of an expert at the expense of the state, he must establish that there exists a reasonable probability both that an expert would be of assistance to the defense and that the denial of expert assistance would result in a fundamentally unfair trial. To meet this standard, a defendant must ordinarily establish, with a reasonable degree of specificity, that the assistance is required to answer a substantial issue or question that is raised by the prosecution's case or to support a critical element of the defense. If the trial court finds that the indigent defendant is able to meet this standard, it is to authorize the hiring of the expert at the expense of the state.

Id. at 1216.

To the extent that petitioner is arguing that counsel was ineffective for failing to secure funds to hire an expert to determine whether petitioner suffered from post-traumatic stress disorder or depression, that argument is unpersuasive. As an initial matter, the Court notes that, under Louisiana law, "[c]riminal responsibility is not negated by the mere existence of mental disease or

---

[17] Rec. Doc. 3, p. 26.
[18] Id. at p. 30.
[19] Id.
[20] Id. at 31.

defect. To be exempted of criminal responsibility, [a] defendant must show [he] suffered a mental disease or mental defect which prevented [him] from distinguishing between right and wrong with reference to the conduct in question." State v. Morrison, 55 So. 3d 856, 968 (La. App. 2d Cir. 2010). Moreover, in any event, petitioner has presented no evidence that he in fact suffered from "post-traumatic stress disorder and depression," much less that any expert would have concluded that petitioner's mental illness, even if it existed, was so severe as to render him incapable of distinguishing between right and wrong with respect to his sexual activity with his ten-year-old stepdaughter. Without such evidence, he cannot show that counsel was ineffective for failing to secure funds to hire such an expert. See, e.g., Earhart v. Johnson, 132 F.3d 1062, 1067 (5th Cir. 1998) (rejecting claim that counsel was ineffective for failing to request expert assistance because petitioner "failed to show or even allege that an expert could be found whose testimony would have altered the outcome of the state court trial"); Guidry v. Cain, Civ. Action No. 04-2509, 2005 WL 1330133, at *8 (W.D. La. May 31, 2005) (adopted by Melancon, J., on June 21, 2005) (rejecting Strickland claim based on lack of request for pathology expert because petitioner failed to identify an expert witness who would have delivered testimony favorable to the defense).

On the other hand, to the extent that petitioner is simply arguing that defense counsel could have more effectively cross-examined the state's witnesses if he had access to an expert on the sexual abuse of children, that argument is sheer speculation. Even if the Court were to assume that consultation with an independent expert could have resulted in information or guidance which would have been beneficial for cross-examining the state's witnesses, and even if the Court were further to assume that counsel therefore performed deficiently in failing to secure such expert assistance for that purpose, petitioner would still have to prove that prejudice resulted from counsel's failure. As previously noted, in order to prove prejudice, he "must show that there is a

18

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. Petitioner has not made that showing. He has identified no critical flaws in the cross-examination, and, furthermore, the evidence of his guilt, including his confession and the compelling testimony of the victim, was overwhelming. Simply put, petitioner's claim fails because there is no reasonable probability that a different verdict would have resulted if only counsel's cross-examination of the state's expert witnesses had been more effective. See, e.g., Day v. Quarterman, 566 F.3d 527, 539-40 (5th Cir. 2009) (rejecting as speculative and conclusory an ineffective assistance claim arguing that defense counsel failed to challenge adequately the testimony of the state's medical experts through cross-examination).

In summary, to be entitled to relief, petitioner must demonstrate that the state court decision rejecting his ineffective assistance of counsel claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. He clearly has not made that showing in the instant case for the foregoing reasons. Accordingly, utilizing the AEDPA's doubly deferential standards of review applicable to such claims, this Court should likewise deny relief.

## **RECOMMENDATION**

It is therefore **RECOMMENDED** that the federal application for habeas corpus relief filed by James J. Hebert be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will

19

result from a failure to object. 28 U.S.C. § 636(b)(1); <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[21]

New Orleans, Louisiana, this twentieth day of December, 2017.

                                 *Janis Van Meerveld*
                                 **JANIS VAN MEERVELD**
                                 **UNITED STATES MAGISTRATE JUDGE**

---

[21] <u>Douglass</u> referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.